S ART AIN, Judge
(concurring).
Although this writer concurs with the result reached by the majority herein, I am unable to agree with certain conclusions expressed by that opinion.
International Development, Inc., here attempts to enjoin the foreclosure by execu-tory process by the plaintiffs on a second mortgage given on certain Tangipahoa Parish acreage, as more fully described in the majority opinion. International asserts, as justification for this attempt at injunctive relief, that, inter alia, a default judgment was properly confirmed in their favor which recognized their right to have a part of the mortgaged property released from that foreclosure according to contractual terms allegedly incorporated in both the first and second mortgage present on the acreage. These remarks are particularly directed to the appellant’s basic premise that the alleged release clause or clauses properly entitled them to injunctive relief from the foreclosure via executiva.
There is, in the first mortgage on this property dated February 17, 1964, the following paragraph:
“The purchaser shall have the right to obtain the release from the vendor’s lien and special mortgage herein created on any or all of the acreage hereinabove described, provided that 500 acres, or any multiple thereof, is released at one time and the said release shall be effected by paying on the next maturing installment or installments on the above described notes, on any equally proportionate basis, an amount equal to $200.00 per acre of land that is actually released, provided, further, that the acreage that is so released, from time to time, shall be in a square formation, as nearly as possible, and shall be in one contiguous tract.”
Assuming, arguendo, that the above quoted clause is also incorporated into the second mortgage on this property, as asserted by appellants, the question arises whether claims by the mortgagor under such a clause could act as a bar to the executory proceeding, all other requirements for such process having been satisfied. I concur that an executory proceeding could not be barred on such grounds.
There has been absolutely no attack upon the authenticity of the note and act of mortgage sued upon and, indeed, the debt alleged in the petition has not been disputed; the only objection raised to these proceedings by the appellant is their possible right to release of certain of the acreage. If such rights did exist, and were well proven, I agree that such facts would, nevertheless, be insufficient to halt execu-tory process. In Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65 (1960) the Supreme Court had before it an executory proceeding which the defendant sought to entirely enjoin on the grounds that the note sued upon contained usury. There, the court said, in part:
“This suit was instituted on January 29, 1958 by Lucius Mayfield in his capacity as administrator pro tempore of the Sue- *559 cession of Van Mayfield, and by Jesse Holmes Mayfield, having for its immediate purpose to enjoin further prosecution of a suit via executiva instituted by defendants George Nunn and Jack A. Martin to foreclose a mortgage on certain real estate for the alleged reason that the mortgage note, signed by Van Mayfield and Jesse Holmes Mayfield, on which some payments had been made, was tainted with usury. Exceptions of no cause or right of action having been maintained by the lower Court, and writs having been refused by this Court[1] the foreclosure proceedings were terminated and admittedly are no longer open to attack. A devolutive appeal was perfected from the lower Court’s maintaining of the exceptions as to other relief sought, and the matter is now before us for consideration.
Here, as there, the appellants have admitted the debt, but claim that certain of the property should be released to them. Such a contention, if well founded, is not grounds for enjoining the executory proceeding.
Turning now to the merits of the appellants’ principle contention that they are, in fact, entitled to a release of certain of the acreage, the majority has concluded that the second mortgage foreclosed upon herein contains no such release clause. I am respectfully unable to reach the same conclusion. We have previously quoted the original release clause found in the first mortgage. In the second mortgage, that being the instrument foreclosed upon here, the following provision is found:
“Anything hereinabove to the contrary notwithstanding:
“This mortgage excludes that portion of Section 33, T 8 S, R 8 E, Parish of Tangi-pahoa, State of Louisiana, containing 25 acres, more or less, which property was released in an act of partial release, passed before the undersigned notary public on October 11, 1965, and duly recorded in the amortization book number 49 at page 587, in the official records of Tangi-pahoa Parish, Louisiana; and this mortgage shall be and remain subject to the mineral rights reserved by the immediate vendors of International Development, Inc. as set forth in the hereinafter mentioned act of acqusition by mortgagor and whatever, if any, rights may exist in favor of any one or more or all of the parties on account of those servitudes and/or rights of way and/or all leases and/or reservations more fully described in the said act of acquisition, but the parties hereto do not hereby grant any further rights to or extend any existing rights of any of said parties." (Emphasis ours)
I construe the above emphasized portion of the second mortgage clause to incorporate the acreage release clause contained in the first mortgage.
The appellant’s argument fails, however, when consideration is given to the confession of judgment entered into on behalf of the defendant by its president, Thomas E. Zammit, on July 29, 1969. I fail to find therein any mention made of the reservation of rights as to acreage releases. Nor do I find any other evidence whatsoever that the rights guaranteed by the release clause or clauses were ever protected or asserted in any way from the inception of this transaction in 1964 until the plaintiffs began their foreclosure other than the above cited provision in the second *560 mortgage. To be considered in the confession of judgment are these statements:
“. . . And appearer hereby waives all defenses, notice, service of petition and citation and consents and agrees that if at any time after October 23, 1969, one or more suits are filed in which this confession of judgment is presented and if each such suit is supported by an affidavit executed by Henry Boh in which he confirms, under oath, the fact that the note or notes sued upon have not, as yet, been paid (no other proof being required), appearer consents and agrees that judgment may be entered against it immediately for the full amount of principal, interest, and attorney’s fees, as aforesaid, and all costs, in term or vacation, in open court or in chambers, and appearer does further waive any and all legal delays of any nature or kind, including, without limitation, the right to seek a new trial or rehearing or to take an appeal from the said judgment; and in each said judgment that is rendered under this confession of judgment, there may be included the recognition of the vendor’s lien, special mortgage and mortgage hereinabove mentioned, against appear-er’s following described property, to wit
Thereafter, the entirety of the property listed in the second mortgage and foreclosed upon herein is described.
The intent of the confession of judgment is clear and I find in it absolutely no protection of the release clause or any reference whatsoever to it therein. I must conclude, therefore, that the second mortgage being foreclosed upon here did encompass the rights of release provided in the first mortgage but that those rights were totally waived by the confession of judgment. As previously pointed out, however, even if the rights to the acreage releases had not been waived, upon the authority of May-field, supra, the executory proceedings would nevertheless have been valid.
I concur with the majority in its finding that the trial judge was correct in granting a new trial on the confirmation of the default judgment. Such judgments are clearly not inviolable where contrary to the law and the evidence. See Baker Finance Co. v. Hines, 255 La. 971, 233 So.2d 902 (1970).
The record here is replete with charges and counter charges of fraud and deliberate misconduct on the part of counsel for all parties. An examination of these proceedings leads this writer to conclude that, while counsel have undoubtedly been un-conciliatory to each other in many respects, I find no basis for any comment beyond that conclusion.

“1. The plaintiffs, in applying for writs of certiorari and mandamus, sought to restrain absolutely and in its entirety the sale under executory process, though admitting an indebtedness in a lesser amount than the remainder said to be due on the mortgage note; and writs were denied since the law allows the sale to be made to satisfy the undisputed debt; Crowley Bank & Trust Co. v. Hurd, 137 La. 787, 69 So. 175; Sample v. Elliott, 155 La. 941, 99 So. 705.”